IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Alana and Alan Reed,                                                                       (Chapter 13)

          Debtors.                                               Case No. 11-17027

MEMORANDUM DECISION

In this Chapter 13 case, the Internal Revenue Service ("IRS") filed a priority unsecured tax claim of $3,238 for debtors' 2011 income tax liability. Debtors have filed a federal income tax return for tax year 2012 which showed that they were due a refund in the amount of $1,287. Debtors and the IRS agree that the 2012 tax refund is a postpetition event. The IRS seeks relief from the § 362(a) stay to offset that refund against debtors' 2011 taxes.

Bankruptcy Code § 553 provides:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).

Section § 553(a) preserves a creditor's right to setoff where it exists under applicable non-bankruptcy law. "The Bankruptcy Code neither expands nor constricts the common law right of setoff. Rather, it preserves, with exceptions not relevant here, whatever right exists outside bankruptcy." *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998). Section 6402 of the Internal Revenue Code provides:

1

> General rule—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

26 U.S.C.A. § 6402.

Generally, section § 553 imposes three requirements for setoff: (1) the debtor must owe a debt to the creditor which arose prepetition; (2) the debtor must have a claim against the creditor that arose prepetition; and (3) the debt and claim must be mutual. *In re Pleasant*, 320 B.R. 889, 892 (N.D. Ill. 2004) (citing *In re Lakeside Cmty. Hosp.*, 151 B.R. 887, 891 (N.D. Ill. 1993); *Braniff Airways, Inc. v. Exxon Co., USA*, 814 F.2d 1030, 1035 (5th Cir. 1987); *In re Brooks Farms*, 70 B.R. 368, 371 (Bankr. E.D. Wis. 1987)). In essence, courts are to consider two elements: timing and mutuality.

Although there is nothing in the express provision of the Code which allows for postpetition setoff, most courts follow the general rule that "a postpetition claim may be offset against a postpetition debt so long as the claim and debt constitute valid, mutual obligations." 5 Collier on Bankruptcy § 553.03[6], at 553–52 (16th ed.). Nothing in the Code "abrogates the common law right to setoff." *In re Gordon Sel–Way*, 239 B.R. 741, 750–51 (E.D. Mich. 1999) (citing *United States v. Maxwell*). Thus, the question we face is whether the 2012 tax refund and 2011 tax liability are mutual obligations. The debtors and the IRS agree that the 2012 tax refund is a postpetition event so the crux of the issue is whether the debtors' 2011 tax liability arose before or after the petition date.

A number of courts, including this one, have held that "a tax refund for purposes of § 553 arises at the end of the taxable year to which it relates, and not when that right of refund is claimed by the taxpayer/debtor." *Rozel Indus., Inc. v. Internal Revenue Serv. (In re Rozel Indus.*

2

*Inc.*), 120 B.R. 944, 950–51 (Bankr. N.D. Ill. 1990) ("The date on which the return is filed is not relevant in determining when the debt arose."). These cases involved Chapter 7 and 11 petitioners who filed for bankruptcy after the end of the tax year and were owed a tax refund. In this case, the debtors filed for bankruptcy before the tax year had concluded.

The reasoning of this line of cases appears rooted in the "all events" test[1] which is "a fundamental principle in tax accounting" for the determination of when an expense is to be regarded as incurred. *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 600 (1986). The elements of that test are: (1) all the events that establish the fact of the liability must have occurred; and (2) the amount of the liability must be capable of being determined with reasonable accuracy. *Id.* "Thus, to satisfy the all-events test, a liability must be 'final and definite in amount,' must be 'fixed and absolute,' and must be 'unconditional.' " *Id.*

Under this rationale, a tax liability is incurred at the end of the tax year when all events necessary to determine that liability have occurred. At this point both the government's liability for tax refunds and the taxpayers' tax liability becomes "final and definite in amount," "fixed and absolute," and "unconditional." This is true because the IRS can determine its own liability for overpayments only after all events necessary for taxpayers' liability have taken place. For example, if a taxpayer marries or has a child on December 31, the tax liability of that individual, if any, would depend on the events of the last day of the tax year.

---

[1] None of the decisions have explicitly cited to this test or given any reason for why the obligation arises at the end of the tax year. The court in *In re Conti*, which is the first court to consider the issue of whether liability arises when taxes are due or at some time before that, found that "the obligation of the IRS to the debtor arose as of December 31, 1982, the end of the debtor's tax year, subject only to the debtor's filing a tax return claiming the refund within the time limitations prescribed by IRC § 6511(a) (1982)." Each subsequent decision either cited to *Conti* or to a decision citing to *Conti*.

Other courts have held that tax liability accrues "when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed." *United Sates v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993); *United States v. Myers (In re Myers)*, 362 F.3d 667, 673 (10th Cir. 2004). "There is nothing in the definition of 'debt' or 'claim' or in the provisions of § 553 requiring that an amount due must be computed before the bankruptcy petition date." *United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 595-96 (9th Cir. BAP 2007) (citing *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987)). "The term 'claim' means – (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101 (5).

The court in *Braniff Airways, Inc.* stated that a "character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed." 814 F.2d at 1036 (citing *In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. 413, 418 (Bankr. E.D. Tenn. 1984)). But, the court concluded that the debt was pre-petition because "all the transactions which gave rise to this debt occurred prior to the petition date." (citing *In re Delta Energy Resources, Inc.*, 67 B.R. 8, 12 (Bankr. W.D. La. 1986)).

In *Carey*, the IRS argued that it could not owe the chapter 11 debtor a refund until the end of the year because the debtor wouldn't have known the exact amount of overpayment until then. The court rejected this argument: "The fact that the extent of the refund is indeterminate at the time of the filing of the petition does not affect the right of the taxpayer to claim a refund." *Carey*, 375 B.R. at 596. The facts in *Carey* were very similar to those in *Segal v. Rochelle* where the Supreme Court held that a loss carryback tax refund, based on prepetition losses but received postpetition, constitutes property of the estate because it is "sufficiently rooted in the pre-

4

bankruptcy past." 382 U.S. 375, 379-80 (1966). *Segal* remains good law under the Bankruptcy Code even though it was decided under the prior Bankruptcy Act. *In Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

The all-events test is not in direct conflict with the Code definition of a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The IRS in *Carey* had focused its argument on the necessity to calculate and determine the extent of the refund. The real problem is that neither the IRS in *Carey* nor the debtors in our case could determine whether liability even existed until the end of the tax year when all events necessary for that liability to accrue have taken place. It is not only that the amount of liability is unclear until the end of the year; it is the lack of certainty as to the existence of any liability that is the main problem.

> "Generally, a claim or debt must be found to be absolutely owing at the time of the filing of the petition to be considered a pre-petition item. This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that *some definite liability has accrued*."

*Carey*, 375 B.R. at 595 (quoting *Rozel*, 120 B.R. at 949). The definiteness of tax liability simply cannot be determined before the last day of the tax period. That is because at any point during the tax period, even on the last day of that period, a number of events can occur to completely eliminate tax liability. For example, the debtors may decide to donate their entire income to a charity, or incur medical bills that exceed their annual income. Thus, the point "when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed," *Gerth*, 991 F.2d at 1433, is the last day of the year.

5

The debtors in this case contend that the tax liability for 2011 was a result of the debtors' 401k withdrawal in April 2011. The debtors have not presented any evidence to support this contention. If indeed that was the only taxable event shown on their return they may have such a claim, but that cannot be assumed. If, however, their tax liability arose from multiple events, the logic of their contention breaks down.

The *Segal* court suggested that if a postpetition event affected the amount of the refund – or in our case, the amount of tax liability – "then the court should consider a proration of the refund between prepetition and postpetition portions of the tax year at issue." *Carey*, 375 B.R. at 597 (citing *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1517 (10th Cir. 1991)). In *In re Meyers*, 616 F. 3d 626, 628 (7th Cir. 2010), the court addressed the appropriate methodology to be used in calculating what portion of a tax refund constitutes estate property when a debtor files mid-year. While the court conceded that a "pro rate by days method may not be a one-size-fits-all solution," *Id.* at 631, the court determined that a pro rata method is appropriate when the debtor's income has not "fluctuated widely from month to month throughout the year." *Id.* at 629. Ultimately, the *Meyers* court held that the trustee presented a prima facie showing that the debtor's income stream was suitable for a pro rata by days method, and the debtor did not show that this approach was unsuitable in her case. *Id.* at 631. Assuming arguendo that the debtors made a 401k withdrawal in April, but otherwise earned their income at a steady pace, a pro rata method does not seem suitable because the debtors' income was arguably considerably higher in April than any other month in 2011.

In at least one case, where a Chapter 13 bankruptcy petition was filed before the end of the tax year, the court allocated the tax refund between prepetition and postpetition periods, even though the trustee, who requested the pro rata method, presented no proof that "[the] income for

6

the year was received in equal increments." *Wilson v. I.R.S. (In re Wilson)*, 29 B.R. 54, 58 (Bankr. W.D. Ark. 1982). The court allowed the IRS to offset the debtor's prepetition tax liability against the prepetition portion of the refund. *Id.*

Some commentators have suggested that *Wilson* "may have limited or no application after the enactment of I.R.C. § 1398[2]." 11 Collier on Bankruptcy § TX5.08[6][b], at 105 (16th ed.). "Under I.R.C. § 1398, certain debtors may elect to terminate their taxable year on the date when the title 11 petition is filed." *Id.* (citing I.R.C. § 1398(d)(2)). This is unlikely to affect this case as I.R.C. section 1398 is applicable only to "case[s] under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of Title 11 of the United States Code in which the debtor is an individual." I.R.C. § 1398(a). Because the debtors in this case have filed a bankruptcy petition under chapter 13, § 1398 is not applicable.

But, the debtors have not suggested that the court utilize a pro rata method. Even if the court agreed that a pro rata method would have been appropriate in this case, the debtors have simply not presented any evidence to support their contention that their tax liability for 2011 was a result of the 401k withdrawal in April 2011. Thus, prorating the debtors' liability between a prepetition and postpetition portion is not appropriate here.

Finding that the IRS has a right to set off does not necessarily mean that the stay of that setoff must be terminated. It means only that it has made a prima facie showing of "cause" for relief from the automatic stay under § 362(d)(1). *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008) (citing *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000). Then, the burden shifts to the debtor to rebut the prima facie showing. *Id.* "The debtor could meet this

---

[2] "In general.--Notwithstanding section 442, the debtor may (without the approval of the Secretary) elect to treat the debtor's taxable year which includes the commencement date as 2 taxable years--
(i) the first of which ends on the day before the commencement date, and
(ii) the second of which begins on the commencement date." I.R.C. § 1398(d)(2).

burden 'by demonstrating that the interests of the movant seeking setoff are adequately protected.'" *Id.* (citing *Nuclear*, 260 B.R. at 730; *see also Olson*, 175 B.R. at 33 ("Once a creditor establishes that it has cause for relief, the burden shifts to the debtor to show that it will provide adequate protection.")). The debtor may also show that relief "would be unwarranted or inequitable" or "that granting relief from stay would herein impede [the debtor's] fresh start, jeopardize [the debtor's] plan of reorganization, prejudice other creditors or cause other harm." *Id.*

The facts in *In re Ealy* are similar to the ones in this case. In *Ealy*, the court held that the IRS has made a prima facie showing of cause by establishing its right to setoff postpetition tax liability claim against a postpetition tax refund. *Id.* at 414. The court also found that the debtor has "clearly met his burden of rebutting the prima facie showing of 'cause' for relief from the automatic stay" because the debtor was making his payments timely, there was no evidence that the payment stream might be discontinued, or that the IRS was inadequately protected under the confirmed plan. *Id.* Additionally, the court held that the debtor has demonstrated his need for the refund, "which will help him in providing for his family and in fully complying with the terms of his confirmed plan." *Id.*

Here, the debtors have made no such showing. Nothing evidences that they rely on the refund to help them comply with the terms of the plan. As of the date of filing, both debtors were employed and there is no evidence indicating that their income has been discontinued. They are current on their plan payments. The IRS is treated as a priority creditor under the debtors' confirmed plan, so its entire claim will be paid if the plan is completed.

"The primary function of section 362(a)(7), which as we have observed applies by its terms to the setoff of a prepetition debt, 'is to permit rehabilitation of Chapter 11 debtors.'" *In re*

*Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1569 (10th Cir. 1995) (citing *Row Steel, Inc. v. Asphalt & Sealers Equip. Mfg.* (*In re Row Steel, Inc*), 33 B.R. 20, 22 (Bankr. E.D. N.C. 1983)). Presumably the same consideration would apply to Chapter 13 debtors and postpetition setoff. *See id.* If the court lifts the stay to allow the IRS to offset the 2012 refund, it will essentially permit the IRS to accelerate the payment of its claim, but it has not been shown to substantially interfere with the debtors' reorganization efforts.

On the state of the record the motion must be granted. It may be so ordered.

Dated: October 29, 2013

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE